# UNITED STATES DISTRICT COURT

_____ DISTRICT OF MASSACHUSETTS _____

UNITED STATES OF AMERICA

v.

**ALFREDO THEN**
**TAYLOR AVENUE, 3RD FLOOR**
**BRONX, NEW YORK**
(Name and Address of Defendant)

## CRIMINAL COMPLAINT

M.J. No.: ˌ ᵕ ⸴ . ᵕ⸝⸝ ⸝ ᵎ

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. Since at least **on or about August 1, 1998 and continuing thereafter until at least the beginning of March, 2000** in **Middlesex** County and elsewhere in the District of **Massachusetts,** defendant did knowingly and intentionally conspire with Iman Hardy, and with other persons unknown, to possess with intent to distribute, and to distribute, quantities of cocaine, a Schedule II controlled substance, in violation of Title **21** United States Code, Section(s) **846.**

I further state that I am a **D.E.A. Special Agent** and that this complaint is based on the following facts:

**Please see attached Affidavit of Special Agent Michael J. Forti**

Continued on the attached sheet and made a part hereof:    [x] Yes    [ ] No

_____
Signature of Complainant
Special Agent Michael J. Forti

Sworn to before me and subscribed in my presence,

**March 27, 2000** at **Boston, Massachusetts**
Date                          City and State

**LAWRENCE P. COHEN**
**United States Magistrate Judge**          _____
Name and Title of Judicial Officer          Signature of Judicial Officer

## AFFIDAVIT OF SPECIAL AGENT MICHAEL J. FORTI

I, Michael J. Forti, being duly sworn, hereby depose and state as follows:

1.    I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been so employed for thirteen years. I am currently assigned to the DEA's Logan Airport Transportation Task Force in Boston, Massachusetts. I have been assigned to the Logan Airport Task Force for two years. While a DEA special agent, I have participated in numerous investigations involving controlled substances, including cocaine.

2.    I am submitting this affidavit in support of a criminal complaint charging ALFREDO THEN with conspiracy to distribute and possess with intent to distribute cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846. For the reasons set forth hereinafter, I believe that since at least August of 1998, and continuing until at least the beginning of March, 2000, ALFREDO THEN has been distributing multi-kilogram quantities of cocaine in the greater Boston area on a regular basis, in violation of 21 U.S.C.§ 846.

3.    I am currently the case agent in charge of an ongoing investigation into the illegal distribution of cocaine by ALFREDO THEN and others. This affidavit is being submitted for the limited purpose of establishing probable cause to believe that ALFREDO THEN, along with others known and unknown to the government, committed the above-described offenses. Accordingly, I have not included each and every fact known to myself and other

1

law enforcement officers involved in this investigation. Finally, the facts set forth below are based upon my conversations with other agents and law enforcement officers involved in this investigation, my conversations with a cooperating witness, my review of documents and other tangible evidence, and my own personal observations.

## BACKGROUND

4.   On January 24, 2000, an individual by the name of Manuel Davis ("Davis") was arrested at Logan Airport by agents of the Logan Airport Task Force for possession of what appeared to be approximately one and a half kilograms of cocaine. The white powdery substance in Davis' possession was subsequently field-tested, and did not test positive for the presence of cocaine. Davis acknowledged, however, that he thought the substance was cocaine, and was subsequently charged in state court with possession of a counterfeit substance with the intent to distribute it.

5.   After Davis was arrested, he agreed to cooperate with the government. Davis consented to a search of his apartment in Everett, Massachusetts. I and other agents searched Davis' apartment on the evening of January 24, 2000. During the course of that search, we recovered, among other things, approximately 240 grams of cocaine, two small electronic scales with white powder residue on them, one box of glad sandwich bags, one razor, and drug-trafficking ledgers.

2

6.    On January 28, 2000, I and other agents debriefed Davis regarding Davis' drug-trafficking activities and his sources of supply.  Davis told us that he has been in the drug business since approximately the summer of 1998, and that his primary source of supply was an individual by the name of Iman Hardy. According to Davis, he and Hardy had known each other in high school, and had been friends for approximately nine years.  Davis explained that he initially began purchasing small quantities of cocaine and crack from Hardy on a sporadic basis, but then gradually began purchasing larger and larger quantities from Hardy as his business expanded.

7.    Davis told me that in the spring of 1999, he accompanied Iman Hardy to New York City to pick up two kilograms of cocaine.  At that time, Davis met one of Hardy's main sources of supply, an individual known to Davis only as "ALFREDO."  Davis described ALFREDO as a Dominican male in his late 20's, with short black hair and an average build.  Davis told me that he subsequently made approximately six more trips to New York with Hardy to pick up cocaine from ALFREDO.  Davis also provided me with ALFREDO's pager number and cellular telephone number.

8.    In December of 1999, Davis had a falling out with Hardy, and began purchasing cocaine directly from ALFREDO.  On or about January 5, 2000, ALFREDO drove up from New York and delivered a half of a kilogram of cocaine to Davis, at his apartment in Everett, Massachusetts.  Davis paid ALFREDO

3

approximately $14,500.00 for the cocaine, and ALFREDO returned to
New York.

9.   On or about January 6, 2000, Davis contacted ALFREDO
and told him that he needed more cocaine.  ALFREDO drove up to
Massachusetts approximately two to three days later and delivered
an entire kilogram of cocaine to Davis, for which Davis paid
$30,000.00.  Finally, on or about Friday, January 21, 2000,
ALFREDO delivered a second kilogram of cocaine to Davis at his
apartment in Everett, Massachusetts.  According to Davis, the 240
grams of cocaine seized from his apartment on Monday, January 24,
2000, by myself and other agents, were the remnants of the
kilogram delivered by ALFREDO the previous Friday.

## THE UNDERCOVER INVESTIGATION
## AND THE IDENTIFICATION OF ALFREDO

10.   During the course of the debriefings, Davis told me
that he believed Iman Hardy and ALFREDO had been arrested
together in New Jersey in 1999 for money laundering.  According
to Davis, Hardy and ALFREDO had both mentioned the incident to
him, and had told him that they lost approximately $30,000.00 in
connection with that arrest.  Other agents working on this
investigation subsequently contacted the New Jersey State Police
and learned that Hardy (using the name "London Deon Hardy") and a
second individual named "ALFREDO CONTREA THEN" were in fact
arrested for money laundering in New Jersey on or about October
26, 1999, and that the New Jersey State Police seized
approximately $39,230.00 in United States currency incident to

4

that arrest. As a result of this information and the information provided to me by Davis, I now believe that "ALFREDO" is in fact ALFREDO CONTREA THEN (d.o.b. 5/18/67).

11. On February 2, 2000, acting at my request, Davis placed a call to ALFREDO THEN's cellular telephone in New York (telephone number 917-532-2725). ALFREDO THEN answered the phone. Davis asked ALFREDO THEN to bring him a quantity of cocaine, and asked if he (Davis) could take the cocaine on consignment. ALFREDO THEN and Davis also had a conversation about money owed to ALFREDO THEN by Davis for a prior drug debt. Davis agreed to pay ALFREDO THEN the money (approximately $2,000.00) the following day.

12. On February 3, 2000, at approximately 2:10 p.m., I and other agents met with Davis at his apartment and provided him with $2,000 in cash. The money was to be used to pay ALFREDO THEN for the prior drug debt when THEN arrived at Davis' apartment. I also set up a video and audio transmitter in Davis' apartment to record the transaction between DAVIS and ALFREDO THEN on February 3, 2000. After setting up the equipment, I then left to apartment to take up a position outside where I could monitor the video receiver.

13. At approximately 2:50 p.m., while monitoring the video equipment from a fixed location, I observed Davis receive a telephone call. Davis subsequently advised me that the caller had been ALFREDO THEN, and that THEN was supposed to arrive some time in the next 10 to 15 minutes. At approximately 3:06 p.m. on

5

February 3, 2000, I observed a red Oldsmobile Alero bearing New
York license plates turn onto Davis' street and park at the curb,
approximately two to three car lengths from the entrance to
Davis' apartment building. At that time, I observed an
individual who I later identified as ALFREDO THEN enter the
apartment.

14. The exchange between Davis and ALFREDO THEN in Davis'
apartment on February 3, 2000, was recorded, and I have watched
and listened to the recording of that exchange. On February 3,
2000, Davis paid ALFREDO THEN the money which was owed him.
Davis and THEN also discussed the price of cocaine, the
availability of kilograms, and the fact that Davis had lost a
substantial amount of money in connection with the fake cocaine
which was seized at the airport on January 24, 2000. ALFREDO
THEN concluded the meeting by agreeing to bring Davis a half of a
kilogram of cocaine on consignment the following day.

15. Davis did not hear from ALFREDO THEN the following day,
or in the days immediately following their meeting on February 3,
2000. On February 7, 2000, however, Davis and ALFREDO THEN spoke
again by telephone. ALFREDO THEN asked Davis to come to New York
to pick up cocaine, but Davis refused. ALFREDO THEN then agreed
that he would come up to Massachusetts at some point in the next
few days, but did not commit to a firm date or time.

16. Davis did not hear from ALFREDO THEN again until
February 16, 2000. On that date, at approximately 2:08 p.m.,
Davis paged ALFREDO THEN. At approximately 2:30 p.m. on February

6

16, 2000, ALFREDO THEN returned the page and spoke to Davis. In this call. ALFREDO THEN explained that he had not contacted Davis because he believed Davis was in Florida with Hardy. ALFREDO THEN then told Davis that he would be coming up to Boston the following day, on February 17, 2000, and would "have something for him." ALFREDO THEN told Davis that he would be in Boston around noon the following day, and that he would call him when he got close to the city.

17. Despite repeated calls between ALFREDO THEN and Davis to arrange the delivery of more cocaine to Davis, THEN never dealt with Davis again after Davis paid THEN on February 3, 2000.

18. On March 8, 2000, I and other DEA agents working on this investigation arrested Iman Hardy, Davis' other source of supply. On March 16, 2000, I interviewed Hardy in the presence of his attorney. At that time, Hardy confirmed that he had introduced ALFREDO THEN to Manuel Davis, and that Davis and he had traveled to New York to obtain cocaine from THEN on several occasions in 1999. Hardy also told me that he has known ALFREDO THEN for several years, and has been purchasing multi-kilogram quantities of cocaine from THEN on a regular basis for several years. Hardy told me that since August of 1998, and continuing up until the time of Hardy's arrest on March 8, 2000, ALFREDO THEN supplied Hardy with approximately two kilograms of cocaine a week.

19. I believe that the information provided to me by Iman Hardy regarding ALFREDO THEN's drug-trafficking activities is

7

accurate and truthful, because I have been able to corroborate this information in a number of different ways. First of all, as mentioned above in paragraph 10, ALFREDO THEN and Iman Hardy were arrested together on money-laundering charges in New Jersey in October of 1999. In addition, at the time of Hardy's arrest, I seized a drug ledger from Hardy's residence which contained notations reflecting prior drug transactions between Hardy and ALFREDO THEN. Finally, the information provided by Hardy was corroborated by the information I obtained from Manuel Davis, and the videotaped conversation between Davis and THEN which is described above in paragraph 14.

18. In conclusion, based upon all of the foregoing, I submit that there is probable cause to believe that between at least August of 1998 and March of 2000, ALFREDO THEN did conspire with others known and unknown to the government to distribute and possess with intent to distribute cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846.

_____
MICHAEL J. FORTI
Special Agent
Drug Enforcement Administration

Subscribed and sworn to
before me, this ___day
of March, 2000.

_____
LAWRENCE P. COHEN,
United States Magistrate Judge

8